UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CRAIG CUNNINGHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:16-cv-00223 |
| | ) | Judge Crenshaw |
| VANDERBILT UNIVERSITY, *et al.*, | ) | Magistrate Judge Brown |
| | ) | |
| Defendants. | ) | |

To: The Honorable Waverly D. Crenshaw, Jr., United States District Judge

## REPORT AND RECOMMENDATION

Currently pending is Defendants' partial motion to dismiss the amended complaint. (Doc. 38). Through this motion, Defendants seek dismissal of Plaintiff's common law claims of invasion of privacy and intentional infliction of emotional distress. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that Defendants' partial motion to dismiss be **GRANTED** to the extent that the claim of intentional infliction of emotional distress is dismissed and **DENIED** as to the claim of invasion of privacy.

### I. BACKGROUND

Plaintiff originally filed suit in February 2016 (Doc. 1) and amended his complaint in August 2016. (Doc. 36). Through his amended complaint, Plaintiff alleges that Defendants Vanderbilt University, Vanderbilt University Medical Center, and Does 1-5 violated the Telephone Consumer Protection Act and committed the common law offenses of invasion of privacy and intentional infliction of emotional distress. (Doc. 36). His claims are based on the following allegations.

1

One or both of the Vanderbilt Defendants placed over 400 automated phone calls with a pre-recorded message to Plaintiff's cell phone over the past several years. (Doc. 36, pp. 2-3 ¶ 8). At times the calls were placed in "quick succession of each other sometimes mere 1-2 seconds apart." (Doc. 36, p. 3 ¶ 10). The caller never left a voicemail. (Doc. 36, p. 3 ¶ 11). The calls were not made for an emergency purpose and were placed without Plaintiff's prior express written consent. (Doc. 36, p. 3 ¶ 12). Some of the calls may have been placed as part of a fundraising campaign. (Doc. 36, p. 3 ¶ 12). Plaintiff has not received medical treatment at Vanderbilt Hospital and has not attended or applied to Vanderbilt University. (Doc. 36, p. 4 ¶ 13). Though Plaintiff notified Defendants and the legal department at Vanderbilt University that the calls were "illegal," the calls continued. (Doc. 36, p. 4 ¶ 15). An operator for Vanderbilt explained to Plaintiff that the outgoing caller ID Plaintiff associated with the calls was automatically assigned to all outgoing calls from Vanderbilt Hospital and Vanderbilt University. (Doc. 36, pp. 4-5 ¶ 17). Plaintiff alleges that these repeated unwelcome phone calls invaded his right of privacy and caused loss of focus, annoyance, frustration, stress, and inconvenience. (Doc. 36, p. 5 ¶¶ 18-19). He additionally alleges that these phone calls rise to the level of intentional infliction of emotional distress because they resulted in trouble concentrating, frustration, inconvenience, stress, anger, and annoyance. (Doc. 36, pp. 5-6 ¶¶ 20-21).

On September 6, 2016, Defendants jointly moved to dismiss Plaintiff's common law claims of invasion of privacy and intentional infliction of emotional distress. (Doc. 38). Plaintiff filed a response (Doc. 43) to which no reply has been filed. This case has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Rule 72(a) and (b) of the Federal Rules of Civil Procedure. (Doc. 3). Presented with Defendants' dispositive motion, the undersigned makes the following report and recommendation.

## II. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Jackson v. Ford Motor Co.*, 842 F.3d 902, 906 (6th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim to relief is plausible if the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). At this point in the proceedings, factual allegations are accepted as true, and the complaint is construed in the light most favorable to the plaintiff. *Phillips v. DeWine*, 841 F.3d 405, 413 (6th Cir. 2016) (citations omitted). While "detailed factual allegations" are not required, it is not enough for the complaint to contain "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). With this said, complaints filed by litigants proceeding *pro se* are liberally construed and held to less stringent pleading standards than are applied to pleadings prepared by attorneys. *Frengler v. Gen. Motors*, 482 F. App'x 975, 976 (6th Cir. 2012) (citing *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)).

## III. ANALYSIS

### A. INVASION OF PRIVACY—UNREASONABLE INTRUSION UPON SECLUSION

Accepting the factual allegations in the amended complaint as true and construing the amended complaint in the light most favorable to Plaintiff, the undersigned finds Plaintiff has plausibly stated a claim of invasion of privacy by unreasonable intrusion upon his seclusion.

In 2002 the Tennessee Supreme Court expressly recognized that a cause of action exists at common law for unreasonable intrusion upon another's seclusion. *Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 411 (Tenn. 2002). The court agreed with a lower court

3

decision that had adopted the cause of action as set forth in section 652B of the Restatement (Second) of Torts (Am. Law Inst. 1977). *Id.* (citing with approval *Roberts v. Essex Microtel Assocs., II, L.P.*, 46 S.W.3d 205 (Tenn. Ct. App. 2000)). To recover under this tort, a plaintiff must plead and establish three elements: "(1) an intentional intrusion, physical or otherwise; (2) upon the plaintiff's solitude or seclusion or private affairs or concerns; (3) which would be highly offensive to a reasonable person." *Brandon v. Buffaloe & Assocs., PLC*, No. 2:12-CV-387, 2013 WL 11521679, at *5 (E.D. Tenn. Sept. 4, 2013) (quoting *Burnette v. Porter*, No. W2010-01287-COA-R3CV, 2011 WL 4529612, at *4 (Tenn. Ct. App. Sept. 30, 2011)).

Defendants first argue that Plaintiff failed to allege how receipt of phone calls on his cell phone was an intrusion into a "private place" or "private seclusion." (Doc. 39, p. 6). But this is not an issue of first impression. Excessive unwanted telephone calls may give rise to a claim of unreasonable intrusion upon seclusion. *See Charvat v. NMP, LLC*, 656 F.3d 440, 452-54 (6th Cir. 2011) (analyzing this tort under Ohio law which also follows the Restatement (Second) of Torts § 652B); *Hoffman v. GC Servs. Ltd. P'ship*, No. 3:08-CV-255, 2010 WL 9113645, at *21-22 (E.D. Tenn. Mar. 3, 2010); *Nairon v. Holland*, No. M2006-00321-COA-R3CV, 2007 WL 626953, at *8-9 (Tenn. Ct. App. Mar. 1, 2007). Even the Restatement provides that unwanted telephone calls may give rise to this cause of action:

> There is likewise no liability unless the interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object. Thus there is no liability for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt. ***It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded.***

Restatement (Second) of Torts § 652B cmt. d (emphasis added). The fact that the alleged calls were placed to Plaintiff's cell phone is not a meaningful distinction. Addressing this question, the District Court for the Southern District of West Virginia concisely explained:

> Technology and advances in science now allow individuals to make and receive calls on-the-go and in places in which the conventional land-line telephone would not permit. Defendant has cited no authority for the proposition that the Plaintiffs' receipt of its telephone calls while they were in their car, and outside their homes, should chip away at this longestablished "right to be let alone" in their private affairs.

*Duncan v. JP Morgan Chase Bank, N.A.*, No. 5:10-CV-01049, 2011 WL 5359698, at *6 (S.D.W. Va. Nov. 4, 2011) (also using the Restatement (Second) of Torts § 652B to define the scope of this tort). The undersigned agrees. By alleging receipt of unwanted telephone calls on his personal cell phone, Plaintiff successfully pleaded an intrusion into his private affairs.

Defendants additionally contend that, as described in the amended complaint, the phone calls were not "highly offensive." (Doc. 39, p. 6). This requires a fact-specific inquiry. One factor to consider is the frequency of the phone calls. Relying on comment D to the Restatement, the Sixth Circuit explained:

> Receiving thirty-one calls over the course of three months is certainly less intrusive than receiving "hundreds," but thirty-one calls would be significantly more offensive than receiving three or fewer calls. The threshold of when the number of calls becomes so persistent and frequent as to constitute "hounding" is not clearly delineated; we cannot say as a matter of law that thirty-one calls over three months does not constitute a substantial burden.

*Charvat*, 656 F.3d at 454. One court dismissed a claim that the plaintiff received seven unwelcome calls in the span of two months and no calls over the next three months. *Yount v. Midland Funding, LLC*, No. 2:14-CV-108, 2016 WL 554851, at *9 (E.D. Tenn. Feb. 10, 2016). But where debt collectors placed over seventy-five phone calls within six months, summary judgment was not appropriate. *Hoffman*, No. 3:08-CV-255, 2010 WL 9113645, at *22 (collecting cases). Likewise, calling a private residence hundreds of times over the course of six

months at all hours of the day rose to the level of "hounding" and a jury could reasonably find "that the defendants intentionally intruded upon the plaintiff's seclusion in a 'highly offensive' manner." *Nairon*, No. M2006-00321-COA-R3CV, 2007 WL 626953, at *9.

The purpose of the calls is taken into consideration. The Sixth Circuit explained "that it is important to distinguish instances in which a creditor is calling a debtor from instances in which a telemarketer is placing unsolicited calls to residential telephone subscribers. Indeed, Congress enacted the TCPA because consumers complained that unsolicited telemarketing calls, and in particular automated calls and messages, are 'a nuisance and an invasion of privacy.'" *Charvat*, 656 F.3d at 453 (quoting S. Rep. No. 102-178, at 2, 4-5 (1991), *as reprinted in* 1991 U.S.C.C.A.N. 1968, 1969, 1972).

Additionally, continued telephone calls are objectively more offensive after the recipient has requested the caller desist. *Id.* at 454 ("Persisting in calling after this do-not-call request is more offensive to and likely to outrage a reasonable person.").

Here, Plaintiff alleged he received more than 400 unwanted telephone calls over the course of a few years. Receipt of over 400 unwelcome calls certainly clears that Restatement's comment that three or fewer calls would not give rise to liability. *See* Restatement (Second) of Torts § 652B cmt. d. The frequency of these alleged calls is similar to that in *Charvat*. The Sixth Circuit found that receipt of unwelcome telemarketing calls about once every three days over the course of three months satisfied the pleading standard. *Charvat*, 656 F.3d at 454. The call-to-time ratio is similar here, where Plaintiff alleged receipt of over 400 calls in the course of several years. Unlike the debt-collecting purpose of the phone calls in *Yount*, *Hoffman*, and *Nairon*, Plaintiff alleges that at least some of the unwelcome telephone calls were placed in a fundraising effort. As the *Charvat* court insinuated, unsolicited telephone calls are objectively more

unreasonable than telephone calls to collect a legitimate debt. This is compounded by the fact that Plaintiff notified the callers and counsel that the calls were "illegal," but his admonitions were not heeded. The additional facts alleged further bolster Plaintiff's claim that the frequent phone calls were "highly offensive." At times, the calls were placed within one to two seconds apart. Should the phone be answered, Plaintiff would meet a recording. While Plaintiff was able to identify an outgoing caller ID, it was useless to return the call because the number was not assigned to a specific phone. No voicemail was left to identify the purpose of the call. Plaintiff alleged he suffered from diminished focus, annoyance, frustration, stress, and inconvenience. These allegations suffice to plausibly plead the telephone calls were objectively highly offensive intrusions upon Plaintiff's seclusion.

The authority cited by Defendants, *Meeks v. Gasaway*, No. M2012-02083-COA-R3CV, 2013 WL 6908942 (Tenn. Ct. App. Dec. 30, 2013), is not even a remotely similar comparator. In *Meeks*, the plaintiff alleged invasion of privacy, among other claims, based on a former business partner filing suit against him. *Meeks*, No. M2012-02083-COA-R3CV, 2013 WL 6908942, at *7. Remarking that these allegations did not show an invasion of the plaintiff's privacy, the court agreed with the lower court's dismissal of the claim. *Id.*

Taking Plaintiff's factual allegations as true and construing them in the light most favorable to him, he has stated a plausible claim for intrusion upon his seclusion. For this reason, Defendants' motion to dismiss this claim should be **DENIED**.

## B. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Accepting Plaintiff's factual allegations as true and construing them in the light most favorable to Plaintiff, the amended complaint fails to state a plausible claim for intentional infliction of emotional distress.

The State of Tennessee recognizes a common law tort of intentional infliction of emotional distress. *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 204-05 (Tenn. 2012) (citations omitted). "The elements of an intentional infliction of emotional distress claim are that the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff." *Id.* at 205 (citations omitted).

Defendants' alleged phone calls do not plausibly constitute "outrageous conduct." The State of Tennessee adopted the standard for outrageous conduct as set forth in the Restatement (Second) of Torts § 46 comment d (Am. Law Inst. 1965):

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

*Leach v. Taylor*, 124 S.W.3d 87, 92 (Tenn. 2004) (quoting *Bain v. Wells*, 936 S.W.2d 618, 623 (Tenn. 1997)). The scope of liability "does not extend to mere insults, indignities, threats, annoyances, petty oppression or other trivialities." *Bain*, 936 S.W.2d at 622 (quoting *Medlin v. Allied Inv. Co.*, 398 S.W.2d 270, 274 (Tenn. 1966) *abrogated on other grounds by Camper v. Minor*, 915 S.W.2d 437 (Tenn. 1996)). The case of *Lourcey v. Estate of Scarlett*, 146 S.W.3d 48 (Tenn. 2004) illustrates the high standard imposed by this element: the deceased defendant's conduct was "outrageous" when he told a passerby that his wife was having a seizure and shot his wife and himself in front of the passerby while she was calling 911 for help. *Lourcey*, 146 S.W.3d at 52. Excessive phone calls satisfied this element in *Nairon v. Holland*, No. M2006-

00321-COA-R3CV, 2007 WL 626953 (Tenn. Ct. App. Mar. 1, 2007). There, the defendant made hundreds of phone calls within the span of several months, would let the phone ring for long periods of time, would either whistle or play the radio when the phone was picked up, or would threaten the listener. *Nairon*, No. M2006-00321-COA-R3CV, 2007 WL 626953, at *6. Similarly, allegations of overly aggressive debt collection attempts by letter and by phone satisfied this second element in *Moorhead v. J. C. Penney Company*, 555 S.W.2d 713 (Tenn. 1977). In *Moorhead*, J.C. Penney erroneously assessed fees against the plaintiffs, and despite the plaintiffs' efforts to correct the error and J.C. Penney's own recognition of the error, the company instituted an antagonistic campaign by mail and phone to collect the disputed debt. *Moorhead v*, 555 S.W.2d at 715-17. For more than a year, J.C. Penney made numerous phone calls and sent approximately forty-two threatening letters and bills to the plaintiffs in which the company threatened to damage the plaintiffs' credit reputation and interfere with their employment opportunities. *Id.* at 717.

Neither the character nor the volume of phone calls alleged in this case rise to the level of outrageous conduct. Receiving voluminous telephone calls from a generic outgoing number and being unable to reach the caller by redialing that number may be a nuisance. However, the benign, nonthreatening nature of the phone calls makes it far less plausible for a reasonable person to find the calls "outrageous."

Additionally, Plaintiff did not plausibly allege a resulting serious mental injury. This element is satisfied where a reasonable person would not be able to adequately cope with the mental stress induced by the defendant's intentional or reckless outrageous conduct. *Rogers*, 367 S.W.3d at 210. The court should consider evidence of physiological or psychological manifestations of emotional distress and their duration and intensity, whether the plaintiff sought

9

medical treatment, and evidence of impairment in the plaintiff's daily functioning. *Id.* at 209-10. The court in *Nairon* found a claim could survive summary judgment where the plaintiffs and witnesses testified that the defendant's conduct had effectively incapacitated the plaintiffs, caused them to lose sleep, and put them in a constant state of fear. *Nairon*, No. M2006-00321-COA-R3CV, 2007 WL 626953, at *7-8. Likewise, the *Moorhead* plaintiffs stated a valid claim where they alleged the defendant's billing error and debt collection practices caused the plaintiffs to fear damage to their credit reputation which would affect their employment opportunities and standing in the community. *Moorhead*, 555 S.W.2d at 716. The plaintiffs additionally alleged the defendant's conduct resulted in substantial marital discord and physical manifestations of emotional distress. *Id.*

Here, Plaintiff alleged that receipt of over 400 unwanted phone calls over the course of several years caused trouble concentrating, frustration, inconvenience, stress, anger, and annoyance. These relatively trivial complaints do not plausibly suggest that Defendants' conduct caused serious mental harm to Plaintiff. Though he additionally alleged that Defendants' conduct resulted in serious mental injury and that a reasonable individual could not cope with the stress from receiving these phone calls, merely alleging elements of the claim is insufficient to survive a Rule 12(b)(6) motion to dismiss. Finally, seeing as Plaintiff has pursued over fifty lawsuits alleging misuse of telephone equipment in this district alone, Plaintiff seems well able to take out his frustration through litigation.

Because the facts pled do not plausibly state a claim for intentional infliction of emotional distress, Defendants' motion to dismiss this claim should be **GRANTED**, and the claim should be **DISMISSED** under Rule 12(b)(6).

## IV. RECOMMENDATION

For the reasons that follow, the Magistrate Judge **RECOMMENDS** that Defendants' partial motion to dismiss the amended complaint be **GRANTED** to the extent that the claim of intentional infliction of emotional distress is dismissed and **DENIED** as to the claim of invasion of privacy.

The parties have fourteen (14) days after being served with a copy of this Report and Recommendation ("R&R") to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 155 (1985).

Entered this 28th day of February, 2017.

/s/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge